UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SEAN RYAN #787263,

     Plaintiff,

v

MICHIGAN DEPARTMENT OF
CORRECTIONS; STATE OF
MICHIGAN; LINDSEY; KISOR;
ELUM; COREY-SPIKER;
PATIZIKA and KATHLEEN
PULFORD,

     Defendants.

NO. 2:19-cv-12286

HON. VICTORIA A. ROBERTS

MAG. ANTHONY P. PATTI

| | |
|---|---|
| Sean Ryan #787263<br>*In Pro Per*<br>G. Robert Cotton Correctional<br>Facility<br>3500 N. Elm Road<br>Jackson, MI 49201 | Joseph Y. Ho (P77390)<br>Attorney for Defendants MDOC,<br>  State of Michigan, Lindsey, Kisor,<br>  Elum, Corey-Spiker & Pulford<br>Assistant Attorney General<br>Michigan Dept of Attorney General<br>MDOC Division<br>P.O. Box 30217<br>Lansing, MI 48909<br>(517) 335-3055<br>hoj@michigan.gov |

                                                             /

## MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION

     Defendants Michigan Department of Corrections (MDOC), State of

Michigan, (former) Warden Kevin Lindsey (retired), Library Supervisor

Hatatu Elum, Deputy Warden Tiffani Kisor, Resident Unit Manager

(RUM) Teresa Corey-Spiker, and Health Information Manager Kathleen Pulford (together, MDOC Defendants), through counsel, bring this motion under Fed. R. Civ. P. 56(a), and ask the Court to enter an order granting summary judgment in their favor and dismissing the unexhausted claims against them, based on the grounds set forth in their accompanying brief.

Concurrence has not been sought in this matter because nonmovant is an incarcerated prisoner proceeding pro se.  E.D. Mich. LR 7.1(a)(2)(C).

Respectfully submitted,

Dana Nessel
Attorney General

*s/ Joseph Y. Ho*
Joseph Y. Ho
Assistant Attorney General
Attorney for MDOC Defendants
MDOC Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
hoj@michigan.gov
P77390

Dated:  September 21, 2021

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on September 21, 2021 I electronically filed the *foregoing document(s)* together with this *Certificate of Service* with the Clerk of the Court, which will provide electronic copies to counsel of record and a hard copy of same was placed in First-Class Mail, postage paid, plainly addressed as follows:

Sean Ryan #787263
*In Pro Per*
G. Robert Cotton Correctional Facility
3500 N. Elm Road
Jackson, MI  49201

> */s/ Joseph Y. Ho*
> Joseph Y. Ho (P77390)
> Assistant Attorney General
> Attorney for MDOC Defendants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SEAN RYAN #787263,

     Plaintiff,               NO. 2:19-cv-12286

v

                              HON. VICTORIA A. ROBERTS

MICHIGAN DEPARTMENT OF
CORRECTIONS; STATE OF         MAG. ANTHONY P. PATTI
MICHIGAN; LINDSEY; KISOR;
ELUM; COREY-SPIKER;
PATIZIKA and KATHLEEN
PULFORD,

     Defendants.

---

| | |
|---|---|
| Sean Ryan #787263<br>*In Pro Per*<br>G. Robert Cotton Correctional<br>Facility<br>3500 N. Elm Road<br>Jackson, MI 49201 | Joseph Y. Ho (P77390)<br>Attorney for Defendants MDOC,<br>  State of Michigan, Lindsey, Kisor,<br>  Elum, Corey-Spiker & Pulford<br>Assistant Attorney General<br>Michigan Dept of Attorney General<br>MDOC Division<br>P.O. Box 30217<br>Lansing, MI 48909<br>(517) 335-3055<br>hoj@michigan.gov |

                                                  /

## MDOC DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION

                     Dana Nessel
                     Attorney General

                     Joseph Y. Ho
                     Assistant Attorney General
                     Attorney for MDOC Defendants

                                        MDOC Division
                                        P.O. Box 30217
                                        Lansing, MI 48909
                                        (517) 335-3055
                                        hoj@michigan.gov
Date: September 21, 2021                 P77390

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents.......................................................................i

Concise Statement of Issues Presented................................... iii

Controlling or Most Appropriate Authority .............................iv

Statement of Facts.................................................................... 1

Argument .................................................................................. 4

I.    Standard of Review ........................................................ 4

II.   Plaintiffs failed to exhaust administrative remedies on their
      claims. ........................................................................... 5

Conclusion and Relief Requested............................................ 16

# INDEX OF AUTHORITIES

<u>Page</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................ 4

*Christian v. Belcher*,
   888 F.2d 410 (6th Cir. 1989) .................................................................. 4

*Jones v. Bock*,
   549 U.S. 199 (2007) ............................................................................ 5, 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................ 4

*Porter v. Nussle*,
   534 U.S. 516 (2002) ..................................................................... 6, 15, 16

*Preiser v. Rodriguez*,
   411 U.S. 475 (1973) ................................................................................ 7

*Sowards v. Loudon Cnty.*,
   203 F.3d 426 (6th Cir. 2000) .................................................................. 5

*Woodford v. Ngo*,
   548 U.S. 81 (2006) ...................................................................... passim

**Statutes**

42 U.S.C. § 1983 ......................................................................................... iii

42 U.S.C. § 1997(e)(a) ............................................................................ iii, 7

42 U.S.C. § 1997e(a) .............................................................................. 5, 6, 7

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................... 4

## CONCISE STATEMENT OF ISSUES PRESENTED

1. 42 U.S.C. § 1997(e)(a) requires a prisoner-plaintiff to exhaust properly all administrative remedies against all defendants prior to filing a suit under 42 U.S.C. § 1983. Ryan failed to properly exhaust administrative remedies on his claims against MDOC Defendants. Should this Court grant summary judgment for MDOC Defendants, and dismiss them from this suit?

   Plaintiff's Answer:            "No"
   MDOC Defendants' Answer:       "Yes"

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

1.  <u>Exhaustion</u>:  *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006) (holding that the PLRA requires "proper exhaustion of administrative remedies," which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)").

## STATEMENT OF FACTS

Plaintiffs Sean Ryan, a prisoner under the custody of the Michigan Department of Corrections (MDOC), brings this lawsuit challenging the conditions of his confinement at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan.  (ECF No. 1.)  Ryan brings First and Eighth Amendment, Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and Michigan's Elliot-Larsen Civil Rights Act claims arising out of events which allegedly occurred at JCF between January 7 and July 9, 2019.  (ECF No. 6.)  Specifically, Ryan alleges that JCF staff deprived him of his right of access to the courts by denying his requests for a memory typewriter or a laptop and printer, large amounts of typing and carbon paper, and copies of his medical records; that they retaliated and conspired against him; and that they subjected him to unnecessary pain and suffering by preventing from pursuing a complaint about his medical conditions.  (*Id.*)  Ryan filed his complaint on August 2, 2019.  (ECF No. 1.)  MDOC Defendants bringing the instant motion are MDOC, State of Michigan, (former-)Warden Kevin Lindsey (retired), Library Supervisor Hatatu Elum, Deputy

Warden Tiffani Kisor, Resident Unit Manager (RUM) Teresa Corey-Spiker and Health Information Manager Kathleen Pulford.

Pursuant to MDOC P.D. 03.02.130, "Prisoner/Parolee Grievances," within two business days of a grievable issue, a grievant must attempt to reconcile the issue with the staff member involved; the grievant must then file a Step I grievance within five business days.  (Ex. 1, MDOC P.D. 03.02.130, "Prisoner/Parolee Grievances," (effective date 07/09/2007); Ex. 2, MDOC P.D. 03.02.130, "Prisoner/Parolee Grievances," (effective date 03/18/2019).)  To exhaust administrative remedies through the grievance process, a prisoner must pursue grievances through Step III of the grievance process.  (*Id.*)  A prisoner's Step III Grievance Report tracks all of the grievances that had been filed at Step III.  (Ex. 3, Ryan's Step III Grievance Report.)  Ryan's Step III Grievance Report shows that he had pursued, through Step III, four grievances arising out events occurring at JCF between the first incident alleged in his amended complaint and when he filed his original complaint (i.e., between January 7 and August 2, 2019):

2

| Grievance No. (Ex. 2 Pincite) | MDOC Defendants Grieved at Step I | Issue Grieved at Step I | Grievance Outcome |
|---|---|---|---|
| JCF-19-05-0960-28b (88–92) | None | Has two details for bunk restrictions where the issues are permanent and should be treated as special accommodations and not as temporary details | Rejected at Step I as vague as to what the main issue is or who is being grieved; rejection affirmed through Step III |
| JCF-19-05-0876-27b (93–99) | Elum | Denied sufficient paper and carbon paper | Rejected at Step I for as grieving contents of policy or procedure (grievant directed to go to Warden's Forum); rejection affirmed through Step III |
| JCF-19-05-0933-27b (100–104) | None | Denied special accommodation for a specific typewriter model | Rejected at Step I for as grieving contents of policy or procedure (grievant directed to go to Warden's Forum); rejection affirmed through Step III |
| JCF-19-03-0396-12i1 (105–109) | None | Failure to provide listed accommodations (heating pad, no stairs, elevators, wheelchair cushion, foam mattress pad, handicap | Denied at Step I; denial affirmed through Step III |

| | | ramp, bunk with 24 inches head room, bunk with 30x48 clear floor space for transport, cell with 60 inch drawer clear floor space, aid to clean cell, aid to move foot lockers, reach arm for dropped items, and cupholder) | |
|---|---|---|---|

# ARGUMENT

## I.   Standard of Review

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a summary judgment motion, this Court draws all justifiable inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Christian v. Belcher*, 888 F.2d 410, 413 (6th Cir. 1989).  The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the plaintiff.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  In considering whether summary judgment is appropriate, this Court must "look

beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir. 2000).

## II.    Plaintiffs failed to exhaust administrative remedies on their claims.

A prisoner-plaintiff no longer has to plead or demonstrate exhaustion to satisfy the PLRA requirements of 42 U.S.C. § 1997e(a). Now, failure to exhaust administrative remedies is an affirmative defense that must be raised by a defendant. *Jones v. Bock*, 549 U.S. 199 (2007). Under 42 U.S.C. § 1997e(a), a prison inmate cannot maintain a civil rights action with respect to prison conditions brought under any federal law if he did not first exhaust all available administrative remedies.

The Supreme Court has held that exhaustion requires proper exhaustion, which means that the prisoner must complete the administrative review process. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90 (quotation

5

omitted).  Exhaustion of administrative remedies is a prerequisite to
filing a prisoner lawsuit challenging prison conditions.  42 U.S.C.
§ 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  "The plain
language of the statute makes exhaustion a precondition to filing an
action in federal court."  *Nussle*, 534 U.S. at 523.  Exhaustion is an
issue that must be determined before the Court can review the merits of
the plaintiff's claims and the remaining defenses raised by defendants.

The PLRA attempts to eliminate unwarranted federal-court
interference with the administration of prisons, and thus seeks to
"affor[d] corrections officials time and opportunity to address
complaints internally before allowing the initiation of a federal case."
*Id.* at 525.  The PLRA also was intended to "reduce the quantity and
improve the quality of prisoner suits."  *Id.* at 524.

Requiring proper exhaustion serves all of these goals.  It gives
prisoners an effective incentive to make full use of the prison grievance
process and accordingly provides prisons with a fair opportunity to
correct their own errors.  *Ngo*, 548 U.S. at 94.  This is important in
relation to prison systems because it is "difficult to imagine an activity
in which a State has a stronger interest, or one that is more intricately

6

bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973).  Thus, it is essential for a plaintiff to properly exhaust his administrative remedies before filing suit by filing a grievance that complies with the prison grievance system regarding the allegations made in his complaint.

An untimely grievance, or otherwise improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a).  Permitting an untimely or otherwise improperly filed grievance, even though appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction."  *Ngo*, 548 U.S. at 97.  The *Ngo* Court explained:

> A prisoner who does not want to participate in the prison grievance process will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the

7

> prisoner could easily achieve this by violating other
> procedural rules until the prison administration had no
> alternative but to dismiss the grievance on procedural
> grounds.  We are confident that the PLRA did not create
> such a toothless scheme.

*Id.* at 95.  "The level of detail necessary in a grievance to comply with

the grievance procedures will vary from system to system and claim to

claim, but it is the prison's requirements, and not the PLRA, that define

the boundaries of proper exhaustion."  *Jones*, 549 U.S. at 219.

The administrative process applicable to Ryan's grievable claims

is governed by MDOC Policy Directive 03.02.130, "Prisoner/Parolee

Grievances."  Ryan's complaint alleges incidents which are covered by

two versions of P.D. 03.02.130 (effective dates July 09, 2007, and March

18, 2019), and the differences between the two versions are immaterial

for the purposes of this motion.  The more recent version of P.D.

03.02.130 states, in pertinent part, as follows:

> F. Grievances may be submitted regarding alleged violations
> of policy or procedure or unsatisfactory conditions of
> confinement that personally affect the grievant, including
> alleged violations of this policy and related procedures.
>
> * * *
>
> Q. Prior to submitting a written grievance, the grievant shall
> attempt to resolve the issue with the staff member involved
> within two business days after becoming aware of a
> grievable issue, unless prevented by circumstances beyond

8

his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs.  If the issue is not resolved, the grievant may file a Step I grievance.  The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

\* \* \*

T. Grievances and grievance appeals at all steps shall be considered filed on the date received by the Department.  All grievances and appeals shall be date stamped upon receipt. . . .

\* \* \*

W. Within five business days after attempting to resolve a grievable issue with staff, a grievant wishing to advance a grievance must send a completed Prisoner/Parolee Grievance form (CSJ-247A) to the Step I Grievance Coordinator designated for the facility or other office being grieved. . . .

X. The Grievance Coordinator shall log and assign a unique identifying number to each Step I grievance received, including those that may be rejected.  A computerized grievance tracking system shall be used for this purpose.

Y. After receipt of the grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy.  If the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. . . .

\* \* \*

DD. A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response.  To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send

the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due, including any extensions.  If the office being grieved does not have a designated Grievance Coordinator, the grievant is to send the grievance to the Step II Grievance Coordinator for the facility in which s/he is housed.

EE. The Grievance Coordinator shall log each Step II grievance received, including those that may be rejected. The Grievance Coordinator shall use a computerized grievance tracking system to do so.  The Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy.  If the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance.  If accepted, the Grievance Coordinator shall assign an appropriate respondent and indicate the date by which the response is due.  The due date shall be within 15 business days after receipt of the grievance, unless an extension is granted as set forth in Paragraph T.

* * *

HH. A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response.  To file a Step III grievance, the grievant must send a completed Prisoner/Parolee Grievance Appeal form (CSJ-247B) to the Grievance Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions.

II. The Grievance Section shall be the respondent for Step III grievances on behalf of the Director.  Each grievance received at Step III, including those that may be rejected, shall be logged on a computerized grievance tracking system.

10

The tracking system shall include information on the subject matter of each grievance received and, for rejected grievances, the basis for the rejection.  The Grievance Section shall forward grievances regarding clinical issues to the Administrator of the BHCS.  The BHCS Administrator shall ensure the referred grievance is investigated and a response is provided to the Grievance Section in a timely manner.  The Manager of the Grievance Section shall ensure that any additional investigation is completed as necessary for each Step III grievance accepted, including referral to the Internal Affairs and, for disability issues, to the Equal Employment Opportunity Office, as appropriate, and that a copy of the Step III response is provided to the grievant. Generally, Step III responses will be responded to within 60 business days.  The Step III response is final.

Here, Ryan's Step III Grievance Report shows that he had pursued, through Step III, four grievances arising out of incidents occurring at JCF between January 7 and August 2, 2019.  For the reasons discussed below, none of these four grievances exhausted any of the claims asserted in the amended complaint.

In the Step I grievance for JCF-19-05-0960-28b (JCF-0960), it appears that Ryan was complaining that he received two temporary details where he should have received a special accommodation.  (Ex. at 91.)  Ryan did not name any MDOC Defendants (or anybody else) as individuals being grieved, and MDOC rejected the Step I grievance as vague as to who was being grieved (Ex. 2 at 92); the rejection was then

11

affirmed through Step III (Ex. 2 at 88). Accordingly, because JCF-0960 was rejected and MDOC did not reach a decision on its merits at any step of the grievance process, it did not exhaust any claims asserted in Ryan's complaint. Moreover, even if Ryan were to argue that the rejection of JCF-0960 was improper and this Court agreed, it still would not exhaust any claims against any MDOC Defendants because it did not name any of them as individuals being grieved at Step I.

In the Step I grievance for JCF-19-05-0876-27b (JCF-0876), Ryan alleged that Librarian Elum was denying him sufficient paper and carbon paper. (Ex. 2 at 96 & 98–99.) Due to safety and security reasons, MDOC P.D. 05.03.118, "Prisoner Mail,"[1] limits the type and amount of supplies a prisoner may possess for litigation purposes. Because Ryan was grieving the policy limits on paper supplies a prisoner may possess, MDOC rejected the Step I grievance as grieving the contents of MDOC P.D. 05.03.118 ¶¶ H & I, and directed Ryan to go to the Warden's Forum. (Ex. 2 at 97.) Ryan disagreed with the characterization of his grieved issue as a Warden's Forum issue in his

---

[1] Current version available online at: https://www.michigan.gov//documents/corrections/05_03_118_645850_7 _WITH_NOTICE_669194_7.pdf (last visited Sept. 20, 2021).

Step II appeal (Ex. 2 at 94), and there is no record that Ryan went to the Warden's Forum to raise his complaints regarding MDOC's limitations on supplies. The Step I rejection was subsequently affirmed through Step III (Ex. 2 at 88). Accordingly, because JCF-0876 was rejected and MDOC did not reach a decision on its merits at any step of the grievance process, it did not exhaust any claims asserted in Ryan's complaint. Moreover, even if Ryan were to argue that the rejection of JCF-0876 was improper and this Court agreed, it would exhaust Ryan's denial-of-supplies claims against only Elum because she was the only individual named and grieved at Step I.

Similarly, in the Step I grievance for JCF-19-05-0933-27b (JCF-0933), Ryan alleged that he was denied a special accommodation for a specific typewriter model; notably, Ryan did not name any individuals being grieved at Step I. (Ex. 2 at 103.) Due to safety and security reasons, MDOC P.D. 04.07.112, "Prisoner Personal Property,"[2] limits the model of typewriter a prisoner may possess. Because Ryan's requested model is not among the approved models, Ryan was

---

[2] Current version available online at https://www.michigan.gov/documents/corrections/04.07.112_combined_7 23389_7.pdf (last accessed Sept. 20, 2021).

13

effectively grieving the policy which disallowed him from possessing the requested model, so MDOC rejected the Step I grievance as grieving the contents of MDOC P.D. 04.07.112 ¶ Q, and directed Ryan to go to the Warden's Forum.  (Ex. 2 at 104.)  Ryan disagreed with the characterization of his grieved issue as a Warden's Forum issue in his Step II appeal (Ex. 2 at 101), and there is no record that Ryan went to the Warden's Forum to raise his complaints regarding MDOC's limitations on supplies.  The Step I rejection was subsequently affirmed through Step III (Ex. 2 at 104).  Accordingly, because JCF-0933 was rejected and MDOC did not reach a decision on its merits at any step of the grievance process, it did not exhaust any claims asserted in Ryan's complaint.  Moreover, even if Ryan were to argue that the rejection of JCF-0933 was improper and this Court agreed, it still would not exhaust any claims against any MDOC Defendants because it did not name any of them as individuals being grieved at Step I.

Last, in the Step I grievance for JCF-19-03-0396-12i1 (JCF-0396), Ryan alleged that he was denied a list of special accommodations; notably, Ryan did not name any individuals being grieved at Step I. (Ex. 2 at 108.)  MDOC denied the grievance at Step I, and affirmed the

14

denial through Step III.  (Ex. 2 at 105–109.)  Although MDOC did reach a decision on the merits of Ryan's grievance at each step of the grievance process, JCF-0396 did not exhaust any claims asserted in Ryan's complaint because it did not name any of the MDOC Defendants as individuals being grieved at Step I.

If the exhaustion prerequisite of the PLRA is to have any meaning, it must carry sanctions for noncompliance with administrative procedural requirements.  *Ngo*, 548 U.S. at 95.  Here, prior to filing suit challenging the conditions from which this lawsuit arose, the PLRA required that Ryan exhaust his administrative remedies regarding those conditions or actions.  *Nussle*, 534 U.S. at 523.  Moreover, the PLRA requires that Ryan comports with all of MDOC's procedural requirements in order to properly exhaust administrative remedies.  *Ngo*, 548 U.S. at 95.  But Ryan failed to exhaust properly any claims asserted in his complaint against MDOC Defendants.  Ryan's failure to present properly his claims against MDOC Defendants in the grievance procedure prevented MDOC from addressing and reviewing these claims on the merits.  *Ngo*, 548 U.S. at 90, 92.  Accordingly, Ryan failed to complete the administrative review process regarding his

claims against MDOC Defendants and cannot now present them in this Court. *Id.* at 88; *Nussle*, 534 U.S. at 523. This Court should therefore dismiss the unexhausted claims and dismiss this lawsuit in its entirety.

## CONCLUSION AND RELIEF REQUESTED

Plaintiff Sean Ryan has failed to exhaust administrative remedies on his claims against MDOC Defendants. This Court should therefore grant summary judgment in MDOC Defendants' favor, dismiss the unexhausted claims, and dismiss this lawsuit in its entirety.

Respectfully submitted,

Dana Nessel
Attorney General

*s/ Joseph Y. Ho*
Joseph Y. Ho
Assistant Attorney General
Attorney for MDOC Defendants
MDOC Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
hoj@michigan.gov
Dated: September 21, 2021        P77390

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on September 21, 2021 I electronically filed the *foregoing document(s)* together with this *Certificate of Service* with the Clerk of the Court, which will provide electronic copies to counsel of record and a hard copy of same was placed in First-Class Mail, postage paid, plainly addressed as follows:

Sean Ryan #787263
*In Pro Per*
G. Robert Cotton Correctional Facility
3500 N. Elm Road
Jackson, MI  49201

*/s/ Joseph Y. Ho*
Joseph Y. Ho (P77390)
Assistant Attorney General
Attorney for MDOC Defendants
MDOC Division
P.O. Box 30217
Lansing, MI 48909

17