UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN RYAN,

      Plaintiff,           Case No. 19-12286

v.                             District Judge Victoria A. Roberts

MICHIGAN DEPARTMENT OF CORRECTIONS,
STATE OF MICHIGAN, et al.

      Defendants.

_____/

**ORDER GRANTING PLAINTIFF'S MOTION TO SUPPLEMENT [ECF NO. 37] AND GRANTING MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION [ECF No. 34]**

## I.    Introduction

Ryan filed a pro se lawsuit challenging the conditions of his confinement at the G. Robert Cotton Correctional Facility (JCF). [ECF No. 1]. The complaint seeks injunctive relief and money damages. As defendants it names the State of Michigan, the Michigan Department of Corrections (MDOC) and various MDOC current and former staff and officials.

Ryan says that Defendants violated his rights under the First and Eighth Amendments, the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), all arising out of events which allegedly occurred at JCF in 2019.

1

[ECF No. 6]. Before the Court is Defendants' motion for summary judgment on these counts. Ryan also seeks to supplement his complaint to add a First Amendment claim arising out of what he believes are illegal charges to his account for legal supplies. [ECF No. 37]

For the reasons below, the Court **GRANTS** Ryan's motion to supplement and **GRANTS** Defendants' motion on all claims.

Ryan's complaint also lists an individual identified only as "Defendant #7 . . . unknown Patizika." The summons for this individual was returned unexecuted and the Court is unaware of his/her identity. The Court **DISMISSES** Defendant Patizika as well.

## II.    Background

Ryan is incarcerated at JCF. His amended complaint refers to four grievances: (1) JCF 0960; (2) JCF 0933; (3) JCF 0876; (4) JCF 0396.

He says JCF staff deprived him of his rights by (1) treating his special bunk accommodations as temporary; (2) denying his requests for a swintec 2416 DM CC model typewriter, (3) denying his requests for large amounts of typing and carbon paper; and (4) denying his requests for various special accommodations.

Ryan also alleges conspiracy and retaliation claims against all Defendants.

### III.   FRCP 15 Supplementation

Ryan seeks to supplement his complaint with an "additional [First Amendment] claim of violation of *Bounds v. Smith* 430 U.S. 817 (1977)." [ECF No. 37, PageID.706]. He says this claim arose out of expenses for legal supplies the prison allegedly had a duty to pay but instead it charged them to his account. Ryan also seeks to: (1) add "further pr[o]of of exhaustion," i.e., exhibits which purportedly show that he exhausted administrative remedies for his retaliation and access-to-courts claim; and (2) add "undeniable proof . . . demonstrating the prejudice needed" for his access-to-courts claim [ECF No. 43, PageID. 785].

Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. Fed.R.Civ.P. 15(d); *Cox v. Mayer*, 332 F.3d 422, 428 (6th Cir. 2003). "There must be some relationship

or linkage between the claims asserted in the original complaint and the supplemental claims." *Imelmann v. Mich. Dep't of Corrs.*, No. 12-cv10671, 2012 WL 2917514, at *1 (E.D. Mich. July 17, 2012).

The Court has "broad discretion" to allow or deny supplemental pleadings. *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 625 (6th Cir. 2016).

Ryan's supplemental claims and exhibits are related to the grievances at issue in the amended complaint. They arose from the same requests for legal supplies and they are an offer of proof on the exhaustion of those grievances.

Ryan's motion to supplement is **GRANTED**.

## IV.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for his motion and must identify portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the

4

non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324.

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Claims that are not supported by admissible evidence are insufficient to establish a factual dispute, as is the mere existence of a scintilla of evidence in support of the non-movant's position. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). The evidence must be such that a reasonable jury could find in the party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

## V.    Analysis

Under the Prison Litigation Reform Act (PLRA), no action may be brought by a prisoner until all administrative remedies available to him have been exhausted. 42 USC § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA requires "proper exhaustion of administrative remedies," which "means using all steps that the agency holds out and doing so properly so that the agency

addresses the issues on the merits." *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006).

The purpose of the PLRA's exhaustion requirement "is to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors . . . and to create an administrative record for those disputes that eventually end up in court." *Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) (internal quotations omitted).

Generally, inmates must exhaust remedies through their prison's comprehensive grievance process. The prison's process determines when and if a prisoner has properly exhausted his claim. *Bock*, 549 U.S. at 218.

Under MDOC policy P.D. 03.02.130, grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant. The policy requires a grievant to attempt to resolve the issue with the staff member involved within two days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control. The policy requires a Step I grievance to be filed within five days of the attempt to resolve the issue. PD 03.02.130 (E).

A Step II grievance may be filed by the prisoner if the prisoner is dissatisfied with the response to a Step I grievance or did not receive a timely response. It must be filed within ten business days after receiving the Step I response. PD 03.02.130 (DD). A Step III grievance may be filed under the same circumstances as a Step II grievance. *Id*.

Complaints filed by prisoners regarding grievable issues, as defined in PD 03.02.130, serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with PD 03.02.130.

Under PD 03.02.130 (F)(1), a grievant may not grieve the contents of policy except as it was specifically applied to the grievant. If a prisoner has a concern with the contents of a policy, he may direct comments to the Warden's Forum. PD 04.01.150.

A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant. It may also be rejected if a grievant did not attempt to resolve the grievance with the staff member involved, unless prevented by circumstances beyond his control or if the issue falls within the jurisdiction of the Internal Affairs Division. PD 03.02.130 (G) (1-2).

PD 03.02.130(S) states that the "[i]nformation provided [in the grievance] is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how) . . . [d]ates, times, places, and names of all those involved in the issue being grieved are to be included. *Id*. at (S).

### a. Grievance JCF-0960

In JCF 0960, Ryan claims that he had two "temporary details" for bunk restrictions that "should have been treated as special accommodations [under] P.D. 04.06.180 (E)." [ECF No. 34-3, PageID.643].

P.D. 04.06.180 (E) provides that "[t]he Bureau of Health Care Services (BHCS) shall be responsible for the Department's mental health programs offered to prisoners and shall coordinate and monitor all services." Although it is unclear, Ryan's complaint suggests that the prison did not properly accommodate him for a mental illness or disability.

MDOC rejected JCF 0960 at Step I as "vague/illegible/EXTRANEOUS INFORMATION." [ECF No. 34-3, PageID.642].  The rejection stated that the grievance was "vague as to what the main issue is or who [Ryan was] grieving" and that Ryan provided no information on any specific policy or procedure that had been violated or any unsatisfactory condition of confinement. [ECF No. 34-4, PageID.644]. MDOC's response also informed

Ryan that "grievances need to state who, what, when, why, where, and how." [Id].

Ryan appealed the rejection at Step II, stating only that his grievance was "illegible due to [his] injury but not vague and not extraneous." The rejection was affirmed at Step II. [ECF No. 34-3, PageID.640].

Ryan appealed the rejection again. In his Step III appeal, he stated "there is no extraneous info in the grievance! I said I had [two] details and they should be accommodations per policy!" [ECF No. 34-3, PageID.653]. The rejection was upheld at Step III.

Defendants say that Ryan failed to exhaust JCF-0960 because the grievance: (1) was not decided on the merits, and (2) did not name any of the MDOC Defendants. [ECF No. 34, PageID.528].

Ryan does not address these arguments. Instead, he claims that summary judgment is inappropriate because he attempted to exhaust but "was denied a form, or the grievances were not responded to each time." [ECF No. 36, PageID.673]. Defendants do not dispute that Ryan filed several grievances; they deny that those grievances were properly decided on the merits. Defendants are correct.

PD 03.02.130 (G) (1-2) requires that grievances name the individual being grieved. There is no dispute that in his grievance and appeals, Ryan failed to name an individual who classified his bunk restrictions as "temporary details" rather than "accommodations." It is only in his complaint that Ryan says: "Defendant Lindsey [was] the warden at JCF . . . and ha[d] a duty to ensure that Plaintiff's constitutional rights are not violated and to ensure that Plaintiff as a qualified person with a disability is not discriminated against by being impeded in his access and or denied access to programs, services, and benefits offered at JCF." [ECF No. 6, PageID.156].

Exhaustion requires the inmate to properly follow prison policies. Ryan knew the person's name who was allegedly responsible for his grievance and was directed by the prison to provide that name. He did not do that, in violation of PD 03.02.130 (S). Ryan failed to exhaust JCF 0960. *See Herndon v. Heyns*, 702 F. App'x 325, 327 (6th Cir. 2017) ("[Plaintiff has failed to exhaust his remedies against [defendant] because he never named [defendant] in the grievances that underlie his suit. As such, [defendant] is entitled to summary judgment").

Defendants' motion for summary judgment is **GRANTED** with respect to JCF 0960.

### b. Grievance JCF- 0933

In grievance 0933, Ryan claimed he was denied a special accommodation for a swintec 2416 DM CC typewriter model, in violation of the ADA, the RA, and the Michigan ELCRA. He says that, because of his medical conditions, this particular typewriter was necessary for him to pursue a legal action for inadequate medical care pending in a different case. [ECF No. 6, PageID.163]. Defendants argue that MDOC PD 04.07.112 limits the model of typewriter a prisoner may possess and because Ryan's requested model is not among the approved models, his grievance improperly challenged an entire policy, not just as applied to him.

Exhibit B of Ryan's complaint shows that he filed an Offender ADA Reasonable Accommodation Request and Appeal. [ECF No. 1, PageID.61-64]. It was denied and Ryan followed up by filing JCF- 0933. The prison rejected his grievance at Steps I - III and directed him to raise the issue at the Warden's Forum. [ECF No. 34, PageID.529].

Defendants claim this grievance was not decided on the merits. Although it is questionable whether raising the issue at the Warden's Forum would have yielded a decision on the merits, this is the administrative remedy the prison held out to Ryan as necessary for exhaustion. No evidence is

11

presented that Ryan attempted to raise the typewriter issue at the Warden's Forum.

Ryan says exhibits X1-X5 show that he made such an attempt. However, these exhibits are letters originally addressed to the grievance coordinator and it appears that Ryan or someone else redacted the grievance coordinator's title and wrote in "Warden's Forum" by hand in the address line.  And these exhibits make no mention of the typewriter. Instead, exhibits X1-X5 describe Ryan's grievance with Defendant Elum's alleged interference with his access to the courts due to insufficient paper. [ECF No. 36, PageID.696-700].

Because Ryan identifies no evidence that he raised JCF- 0933 at the Warden's Forum, there is no dispute that he failed to exhaust JCF-0933.

Defendants' motion for summary judgment is **GRANTED** with respect to JCF- 0933.

### c. Grievance JCF- 0876

In grievance JCF- 0876, Ryan claimed that Elum, the prison librarian, denied him sufficient paper and carbon paper he needed for litigation purposes. He believes these denials interfered with his access to the courts, in violation of the First Amendment. [ECF No. 34-4, PageID.650].

12

MDOC rejected the grievance at Step I because MDOC PD O5.03.118 (I) limits the amount of typing paper and carbon paper prisoners can purchase for legal work to a "reasonable quantity." MDOC decided that the grievance fell under PD 03.02.130 (F)(1), which states that a grievant may not grieve the contents of a policy except as it was specifically applied to the grievant. The rejection characterized his grievance as a "nongrievable" issue and directed him to raise his grievance at the Warden's Forum. [ECF No. 34-4, PageID.649].

Ryan objected to this characterization, claiming that he was grieving the policy specifically as it applied to him. [ECF No. 34-4, PageID.646]. His grievance stated that Elum denied him a "more reasonable" quantity of supplies given the large size of his lawsuit. [ECF No. 6-1, PageID.300]. MDOC rejected the grievance at Steps II-III as a non-grievable issue and directed him to the Warden's Forum again.

Ryan claims that he attempted to raise JCF- 0876 at the Warden's Forum as directed. He submits Ex. H., a letter he allegedly gave to a Warden's Forum representative. Although Ryan appears to have addressed JCF 0876 at the Warden's Forum, the MDOC declined to consider it on the merits.

Generally, to hold a prisoner to the exhaustion requirement, a prison must offer some route to a grievance tribunal that has authority to take some responsive action. *Churner v. Booth*, 532 U.S. 731, 736 n. 4 (2001). This is because an incarcerated person has nothing to exhaust if administrative authorities cannot act on the subject of the complaint. *Id*. The Sixth Circuit held that "[s]o long as the prison system has an administrative process that will review a prisoner's complaint . . . the prisoner must exhaust his prison remedies." *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) (internal quotations omitted). On the other hand, where a prison "has a flat rule declining jurisdiction," exhaustion is not required. *Id*.

Under *Owens*, MDOC's characterization of JCF 0876 as "nongrievable" places it outside the scope of the PLRA's exhaustion requirement; no exhaustion was required to file a claim related to JCF-0876 in court. *See Rancher v. Franklin Cty.*, 122 F. App'x 240 (6th Cir. 2005) (Inmate who allegedly had a broken arm when she was incarcerated in a local county jail demonstrated the existence of a flat rule against medical grievances, which justified excusing the exhaustion requirement of the PLRA.

However, summary judgment is still proper with respect to JCF 0876.

In JCF 0876, Ryan alleges that Elum violated his First Amendment rights by hampering his access to the courts and failing to provide him with a reasonable amount of paper needed for a lawsuit captioned *Ryan v. State of Michigan* [Case No. 20-12502]. [ECF No. 36. PageID.673]. In his initial brief, Ryan says he needed 1,725 sheets of paper to meet the pleading requirements. [Id. at ECF No. 37, PageID.709]. He claims in his Reply to Defendants Response to his Motion to Supplement [ECF No. 43] that he needed 5,148 pages of paper. Elum provided him with 25 sheets of paper and 2 sheets of carbon paper per week. [ECF No. 6, PageID.159]. Ryan claims that, without an adequate amount of paper, he was unable file an amended complaint or appeal the dismissal of the case to the Sixth Circuit. [Id].

Ryan also argues that MDOC was responsible for the cost of his legal supplies, but unjustly charged the expenses to his account, in violation of the First Amendment right to access the courts. He relies on *Bounds v. Smith*, 430 U.S. 817 (1977) (overruled on other grounds), arguing that the state must bear the expense of providing indigent inmates with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.

However, in *Lewis v. Casey*, 518 U.S. 343, 350 (1996), the Supreme Court explained that "[t]he right that *Bounds* acknowledged was the (already well-established) right of access to the courts." The majority traced the boundaries of this right by stating: "we had protected that right by prohibiting state prison officials from actively interfering with inmates' attempts to prepare legal documents . . ." *Id*. (citations and internal quotation marks omitted). *Lewis* makes clear that prisoners must be afforded "a *reasonably* adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id*. at 351 (*quoting Bounds*, 430 U.S. at 825) (emphasis added).

The *Lewis* Court disclaimed statements in *Bounds* that "appear to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court." *Lewis*, 518 U.S. at 354 (*citing Bounds*, 430 U.S., at 825–826, and n. 14, 97 S.Ct., at 1497, and n. 14). The disclaimed language from *Bounds* states: ". . . It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them. . ." The *Lewis* Court's disclaimer of this language made clear that this "elaboration . . . upon the right of access to the courts ha[d] no

antecedent in our pre-Bounds cases, and we now disclaim them." *Lewis*, 518 U.S. at 354.

While the Constitution may guarantee inmates an opportunity to bring a lawsuit to vindicate their constitutional rights, the *Lewis* Court "found no basis in the Constitution—and *Bounds* cited none—for the right to have the government finance the endeavor." *Lewis*, 518 U.S. at 365 (Thomas, J., concurring). The law does not require MDOC to pay for Ryan's legal supplies. Whether to expend state resources to facilitate prisoner lawsuits is a question of policy and one that the Constitution leaves to the discretion of the States. *Id*. at 382.

A prisoner must also have standing to bring a claim for denial of access to the courts. *Lewis*, 518 U.S. at 343. To establish a *Bounds* violation, an inmate must demonstrate an "actual injury" derived from the prison library's alleged hindrance of his efforts to pursue a nonfrivolous legal claim. *Id*.

Ryan submits no evidence that this claim is anything other than frivolous. In *Ryan v. State of Michigan*, No. 20-12502 (November 30, 2021) (Cox, J.), Ryan filed a 700-page complaint and accused 429 defendants, including the State of Michigan, MDOC, Corizon Healthcare, and current and former MDOC directors, prison wardens, and staff, of conspiracy and

retaliation spanning over 12 years across several different prisons. [*Ryan v. State of Michigan*, Case No. 20-12502, ECF No. 23, PageID.1275] (Cox, J.)]. The court dismissed his 700-page original complaint, allowed him to amend it, and then dismissed the 350-page amended complaint. Both times the court found that his conspiracy claims were conclusory and that "[h]e fail[ed] to provide any specific facts of such conduct as to any particular defendant, let alone each of the 429 defendants. [*Ryan v. State of Michigan*, Case No. 20-12502, ECF No. 23, PageID.1275] (Cox, J.)].

Ryan's injury in that case is speculative and his legal claims were deficient. Ryan makes no showing that he was prejudiced by his inability to obtain the 1,725 pages he requested.

Even if Ryan could show he was harmed by not being able to file a complaint approaching 2,000 pages, it would not amount to a constitutional violation. "[T]he Constitution requires no more than *reasonable* access to the courts;" it does not require that prisoners have access to completely unfettered communication. *see Pickett v. Schaefer*, 503 F. Supp. 27, 28 (S.D.N.Y.1980) (emphasis added); *see also Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995).

The Supreme Court recognized that certain limitations on prisoner constitutional rights are permissible. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation . . . of retained constitutional rights of . . . convicted prisoners").

In *Jordan v. Johnson*, 381 F. Supp. 600, 602 (E.D. Mich. 1974), aff'd, 513 F.2d 631 (6th Cir. 1975), the Sixth Circuit held that a prison regulation concerning law libraries was flexible enough to permit 11 1/2 hours per week for legal research and could not be construed as a denial of access to courts. Instead, the regulation came within the sphere of discretionary actions taken by prison officials for orderly administration of prison activities. *Id*. The Court rejected the plaintiffs' argument that they needed more time in the library due to the complexity of their lawsuit. *Id*.

Like the prison policy in *Jordan*, MDOC P.D. 05.03.118 limits the type and amount of paper a prisoner may possess for litigation purposes to a "reasonable quantity."  Defendants say this policy is justified due to safety and security reasons. The Court finds that this policy is within the sphere of discretionary actions taken by prison officials for orderly administration of prison activities.

19

Given the prison's need to assure orderly administration of inmate activities and the scarcity of prison resources, there is no dispute the Elum afforded Ryan a reasonably adequate opportunity to file legal claims. Ryan filed two complaints that were hundreds of pages long, and he filed dozens of motions. The facts Ryan provided to support those claims were insufficient. He claims he needed more paper to either cure these deficiencies or file an appeal in the Sixth Circuit. Even if this were true, Ryan's inability to succinctly state his claims in a way that satisfies the pleading requirements does not amount to a constitutional violation on the part of Elum. *See e.g., Thomas v. Campbell*, 12 F. App'x 295, 297 (6th Cir. 2001) ("Constitutional violation was not established by fact that prisoner did not have access to the prison library as often as he desired").

The Court **GRANTS** Defendants' motion for summary judgment with respect to JCF- 0876.

### d. Grievance JCF 0396

In JCF- 0396, Ryan alleges that MDOC denied him special accommodations he believes are necessary due to his "chronic serious medical conditions." [ECF No. 34-4, PageID.660]. His requests included: a "heating pad, no stairs, elevators, wheelchair cushion, foam mattress pad,

20

handicap ramp, bunk with 24 inches head room, bunk with 30x48 clear floor space for transport, cell with 60-inch drawer clear floor space, aid to clean cell, aid to move foot lockers, [a] reach arm for dropped items, and [a] cupholder." [Id].

He says he was "constantly being told by every nurse and medical provider that '[he doesn't] meet the criteria' or there is no such accommodation…". Although it is unclear, it appears that Ryan believes that these denials violate the ADA and the RA. [Id].

MDOC decided JCF- 0396 on the merits. [ECF No. 34, PageID.531]. However, Defendants contend that Ryan failed to exhaust because he failed to name any individuals being grieved. [ECF No. 34, PageID.531]. Notably, Ryan named "all MDOC, Michigan, all medical providers, nurses, and unknown" as individuals being grieved. [ECF No. 34-4, PageID.660]. MDOC and the State of Michigan are both defendants here. He properly exhausted his administrative remedies.

The Court will consider whether Ryan's claims under the RA and the ADA are subject to dismissal on summary judgment grounds.

"Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act ... claims brought under both statutes may be

analyzed together." *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557, n.3 (6th Cir. 2000).

To succeed on an ADA claim, Title II of the ADA requires that: (1) plaintiff be a qualified individual with a disability; (2) defendants be subject to the ADA; and (3) plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise intentionally discriminated against by defendants because of a disability. *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).

The term "qualified individual with a disability" includes "an individual with a disability who, with or without ... the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Defendants do not dispute that Ryan is a qualified individual with a disability. He says he suffers from at least twenty "chronic and serious medical conditions," including several "debilitating chronic injuries and ailments" (e.g., neuropathy, circumferential disc bulges, and cervical myalgia). [ECF No. 6, PageID.164-165]. However, Ryan fails to produce

evidence showing what benefits, services, or programs he is precluded from participating in due to his disabilities. He makes separate requests for accommodations under the ADA for legal supplies, but he does not say why the items requested in JCF- 0396 are necessary for him to participate in a service or program provided by the prison. 42 U.S.C. § 12132 protects participation in "benefits, services, programs, or activities" provided by the prison.

While the items Ryan requests would likely make his prison stay more comfortable, there is no evidence that they are necessary for his participation in prison activities. Likewise, Ryan produces no evidence of intentional discrimination based on his disability.

There is no genuine issue of material fact and summary judgment is **GRANTED** with respect to JCF- 0396.

### e. Eighth Amendment Claims

Ryan says Defendants know his injuries and ailments cause him severe and chronic pain, that he "is not being treated effectively," that he has been denied medication, and that the lack of adequate treatment poses a risk of "paralysis, further physical deter[ior]ation and even death." [ECF No. 6, PageID.165].

Notably, Ryan does not allege that Defendants are directly involved in any denials of adequate medical care. His allegations are that Defendants violated the Eighth amendment by denying him accommodations for a specific typewriter, laptop, printer paper, and withholding medical records. Allegedly, Defendants' actions indirectly exacerbate his medical conditions and prevent him from further pursuing his lawsuit for inadequate medical care in *Ryan v. State of Michigan*. [ECF No. 6, PageID.163-164].

The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration" because "the failure to do so . . . may result in pain and suffering which no one suggests would serve any penological purpose." *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008). It "'forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward'" an inmate's serious medical needs. *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)).

Such a claim "contains both an objective component—a 'sufficiently serious medical need'—and a subjective component—a 'sufficiently culpable state of mind.'" *Griffith v. Franklin Cnty.*, *Ky.*, 975 F.3d 554, 567 (6th Cir. 2020) (*quoting Blackmore*, 390 F.3d at 895).

"A sufficiently serious medical need 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (*quoting Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

The subjective component is met where a plaintiff demonstrates that prison officials acted with "deliberate indifference" to a serious medical need. *Harrison*, 539 F.3d at 518. This requires that the prison official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," but nonetheless consciously disregard the risk. *Blackmore*, 390 F.3d at 896 (internal quotation marks and citation omitted); *see also Jones*, 625 F.3d at 941 ("[T]he prison official must have acted with a state of mind similar to recklessness").

To prove the required level of culpability, Ryan must show that Defendants: (1) subjectively knew of an unreasonable risk to his health, (2) drew the inference that an unreasonable risk of harm to him existed, and (3) consciously disregarded that risk. *Blackmore*, 390 F.3d at 896.

Ryan's claim fails under the "subjective" component of the deliberate indifference test. Even if Defendants were aware of his serious medical

25

needs and knew that he requested accommodations to help him pursue his medical complaint in court, there is no evidence that Defendants knew Ryan would face health consequences as a result of the denial of these accommodations.

Had Ryan more succinctly stated his claims, the amount of paper he was permitted to use may have been sufficient for him to correct the deficiencies in his complaint. And while having a swintec 2416 DM CC model typewriter may have eased Ryan's burden of litigating from prison, there is no dispute that he filed his medical complaint, amended it, and filed many other motions using the typewriter provided to him.

These facts would permit Defendants to draw an inference that Ryan had access to the courts and was able to file his medical complaint without accommodations.

Ryan claims that Defendants withheld access to medical records he needed for litigation, but he does not specify what those records are or what purpose they will serve in his suit on appeal. He says that by withholding his medical records, Defendants prevent him from obtaining a "court order for State of Michigan, MDOC, Corizon and other unknown potential defendants to provide the effective course of care ordered by [his] neurosurgeon and

that has been denied for over 9 years[,] causing [him] multiple new injuries and exasperation of [his] pain." [ECF No. 6, PageID.171]. Ryan already has the medical records from his neurology specialist. [ECF No. 6, PageID.219]. These records describe his medical history, diagnosis, and treatment. [Id].

Many of the over 1,000 pages that Ryan submitted in *Ryan v. State of Michigan* and in this case include medical records (e.g., records indicating diagnosis and treatment for cervicalgia, certificates of medical care, physical therapy evaluations, diagnoses, etc.). [ECF No. 6, PageID.221].

If the Sixth Circuit agreed to hear Ryan's appeal, it likely would not consider records obtained after the district court concluded proceedings. Access to more medical records would likely not assist Ryan in succeeding on appeal. The record on appeal consists of "the original papers and exhibits filed in the district court," "the transcript of proceedings, if any" and "a certified copy of the docket entries prepared by the district clerk." Fed. R. App. P. 10(a); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1012 (6th Cir. 2003).

Lastly, Ryan submits no evidence that he exhausted the medical records issue. He does not direct the Court to any portion of the record which confirms that he filed a grievance against the medical records clerk and

appealed through Step III. Even if Ryan's Eighth amendment claim had merit, there is no dispute that he failed to exhaust.

Ryan does not produce evidence showing that Defendants (1) subjectively knew of an unreasonable risk to his health caused by denials of the requested accommodations. However, even if Defendants knew of the risk, Ryan does not produce evidence showing that Defendants (2) drew the inference that an unreasonable risk of harm existed, or that Defendants (3) consciously disregarded that risk.

The Court **GRANTS** Defendants' motion for summary judgment with respect to Ryan's Eighth Amendment claim.

### f. Conspiracy Claims

Finally, Ryan claims Defendants are "delaying and interfering with his attempts to obtain previously prescribed medical care." [ECF No. 6, PageID.164]. He says he has numerous chronic injuries that defendants in *Ryan v. State of Michigan*, (Case No 12-12502) refuse to treat. [ECF No. 6, PageID.165]. He believes this is a conspiracy to prevent him from appealing the dismissal of his case to the Sixth Circuit.

To state a conspiracy claim under § 1983, a plaintiff must show: (1) a single plan, (2) that the alleged co-conspirators shared in the general

conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that deprived the plaintiff of his or her civil rights. *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985); *see also Memphis, TN Area Local v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). A plaintiff must plead the conspiracy with some specificity. *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009).

Ryan's conspiracy claims are vague and conclusory. While he alleges Defendants had a single plan to deny him access to the courts, he does not produce evidence to support these allegations against any Defendant.

Nonetheless, even if Ryan's allegations of a common plan were sufficient, his allegations concerning the other two elements are insufficient. He alleges that the Defendants shared in the general conspiratorial objective by taking or not taking certain actions, e.g., withholding medical records, denying the swintec 2416 DC typewriter, destroying his legal filings, denying large amounts of paper, denying grievance forms, rejecting grievances, putting him on modified access, and denying library time. [ECF No. 6, PageID.165-169]. Ryan submits no evidence showing that any or all of the Defendants had a shared objective to violate his constitutional rights.

In short, Ryan's conspiracy allegations are unsupported by evidence. On summary judgment, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id.* at 324. Claims that are not supported by admissible evidence are insufficient to establish a factual dispute, as is the mere existence of a scintilla of evidence in support of the non-movant's position. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

Defendants' motion for summary judgment with respect to Ryan's conspiracy claim is **GRANTED**.

## VI.   Conclusion

The Court **GRANTS** MDOC Defendants' motion for summary judgment in its entirety.

**IT IS ORDERED.**

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: May 24, 2022